UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RODNEY I. CARR, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 03 C 8553 |
| UNITED AIRLINES, | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Carr, an African-American man, has been employed by United Airlines since November 1998. In 2002, Carr was promoted from his original position as a Ramp Service Worker to the position of Ramp Supervisor. Several months later, as part of United's downsizing in December 2002, Plaintiff returned to his initial position as Ramp Service Worker. In this lawsuit, brought under Title VII of the Civil Rights Act and 42 U.S.C. § 1981, Plaintiff alleges that he was demoted due to his race and that non-African-American employees with less seniority and inferior qualifications were permitted to retain their supervisory positions. Defendant now moves for summary judgment. For the reasons set forth below, Defendant's motion is granted.

## FACTUAL BACKGROUND

Despite being fully apprised of his obligation to do so, (Docket No. 25), Plaintiff has not responded to Defendant's Local Rule 56.1(a) statement of uncontested material facts. In addition, Plaintiff's brief contained neither a factual statement nor supporting evidence or documentation. The Seventh Circuit has routinely held that failure to respond to a moving party's Rule 56.1(a) statement results in that statement being deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003), citing *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 689 (7th Cir. 2000).

Plaintiff's *pro se* status does not excuse his failure to respond. *See Espinoza v. Northwestern University*, 105 Fed. Appx. 113, 2004 WL 1662281 (7th Cir. July 20, 2004) (deeming defendant's 56.1(a) factual allegations true in light of *pro se* plaintiff's failure to respond after receiving notice of obligation to do so); *Coursey v. Henderson*, No. 00 C 2720, 2001 WL 664443, *2 (N.D. Ill. June 12, 2001) (treating defendant's 56.1(a) factual allegations as true in absence of response from *pro se* plaintiff). Therefore, the court will deem the statements found in Defendant's 56.1(a) statement admitted.

Defendant United Airlines hired Plaintiff in November 1998 to serve as a Ramp Service Worker within United's O'Hare Airport Operations Division. (Defendant's Local Rule 56.1(a) Statement, hereinafter, "Def.'s 56.1(a)," ¶¶ 5, 12.) Plaintiff's duties in that position included fueling and de-icing aircraft, receiving and dispatching aircraft, aircraft towing, checking aircraft loading requirements, and baggage sorting. (*Id.* ¶ 13.) In 2001, Plaintiff was temporarily assigned as a Ramp Supervisor for training purposes. (*Id.* ¶¶ 14-15.) Later, on May 5, 2002, he received a promotion to the position of full-time Ramp Supervisor. (*Id.* ¶ 17.) As Ramp Supervisor, Plaintiff was responsible for all aspects of aircraft servicing, customer service resolution, and assisting and directly supervising Ramp Service Workers. (*Id.* ¶ 11.)

Plaintiff worked as a Ramp Supervisor from May 5, 2002 until January 13, 2003. During his first five months in this position, Plaintiff worked in the "product-sort" area, handling and transferring passenger baggage and freight. (*Id.* ¶¶ 19-20.) Operations Manager Bruce Whiting served as Plaintiff's immediate supervisor during this period. (*Id.* ¶ 18.) In October 2002, Plaintiff moved to the "gate" area, where he was supervised by Operations Managers Terry Loughman and Jeffrey Vander Toolen. (*Id.* ¶¶ 21-22.)

Ramp Service Workers at United Airlines are represented by the International Association of Machinists ("IAM"). (*Id.* ¶ 23.) Under the IAM's collective bargaining agreement with United, in the event of a reduction in the workforce, recently-promoted management employees with sufficient seniority in their nonmanagement positions are entitled to return to their original hourly position in order to avoid being furloughed. (*Id.* ¶ 25.) The agreement provides, however, that beginning six months after a promotion, former Ramp Service Workers begin losing the seniority they had acquired in their former position each day they remain in their management positions. (*Id.* ¶ 24.) At a certain point, such workers would no longer retain sufficient hourly seniority to exercise their right to return to their former position to avoid a lay off.

In August 2002, Plaintiff learned that due to the Airline's ongoing financial crisis, United expected to conduct layoffs that would affect Ramp Service management employees. (*Id.* ¶ 26.) In October, Plaintiff asked his supervisors Whiting, Loughman, and Vander Toolen whether he would be affected by the pending layoffs, and offered to return to his hourly position as a Ramp Service Worker to avoid a potential layoff. (*Id.* ¶¶ 28, 31.) His supervisors informed him that his performance had been satisfactory, and that it was not necessary for him to do so at that point. (*Id.* ¶¶ 29; Deposition of Rodney Carr, Def.'s Ex. A, hereinafter "Carr Dep.," at 71.) Loughman specifically told Plaintiff, "[y]ou are doing a good job; keep up the good work." (*Id.* ¶ 29.) Again in November and December, Plaintiff offered to return to his hourly position because "at this point I am losing seniority." (Carr Dep., at 73-74.) On both occasions, Loughman told Plaintiff that the decision was his, and that Loughman could not make the decision for him. (*Id.*)

On December 9, 2002, United Airlines initiated bankruptcy proceedings. (*Id.* ¶ 48.) United's deteriorating financial condition led it to engage in a number of cost-saving measures,

3

including reorganization of several departments and a reduction in workforce at O'Hare International Airport. (Id. ¶ 50.) In January 2003, United initiated the process of streamlining operations at O'Hare, a process which included a reduction in the number of management employees. (Id. ¶ 52.) As part of this process, United conducted a "Comprehensive Review Process" ("CRP") in which it analyzed management employees for potential downsizing. (Id. ¶ 53.) The CRP for Planeside Operations, the department to which Plaintiff was stationed, was completed by Sheri Kawell, Manager of Planeside Operations at O'Hare; Ramp Managers Joe Dicks and Jeannie Massey; Robert Hanselmann, Manager of Contract Services; and several Operations Managers. (Id. ¶ 54.) The participating Operations Managers provided performance feedback regarding the Ramp Service Workers they supervised. (Id.) The CRP assigned each management employee a rating based on his or her job performance, qualifications, and experience. (Id. ¶ 56.) United managers (not identified in the record) conducted an evaluation of Plaintiff as part of the January 2003 CRP, though his evaluation was "cursory" because he had previously voluntarily returned to his non-managerial position as Ramp Service Worker. (Id. ¶ 64, 67.) As a result of this process, many employees were furloughed, had their positions eliminated, or were demoted to a lower-level position effective January 19, 2003. (Id. ¶ 61.)

On January 9, 2003, Whiting discussed with Plaintiff his 2002 annual performance review. (Def.'s 56.1(a), ¶¶ 37-38.) Whiting conducted the performance review because he had been Plaintiff's direct supervisor during the five months in which he worked in the "product-sort" area, longer than his supervisors during his service in the "gate" area. (Def.'s 56.1(a), ¶¶ 37-39.) In this review, Plaintiff received an overall rating of "partially achieved expectations." (Id. ¶ 40.) During this discussion, Whiting informed Plaintiff that he would likely be furloughed soon, and Plaintiff

4

responded by saying he would return to his hourly position as a Ramp Service Worker to avoid being laid off. (*Id.* 42.) Plaintiff returned to his Ramp Service Worker position on January 13, 2003. Plaintiff likely would have been furloughed had he not voluntarily returned to his Ramp Service Worker position. (*Id.* ¶ 68.) Since the January 2003 layoffs, United has hired a number of Ramp Supervisors to address vacancies as they have arisen.[1] (*Id.* ¶ 63.) Nevertheless, the airline continues to operate with fewer Ramp Supervisors than were employed prior to the layoffs. (*Id.*)

On May 20, 2003, Plaintiff filed a discrimination charge with the Illinois Department of Human Rights and federal Equal Employment Opportunity Commission ("EEOC"). In his EEOC charge, Plaintiff alleged that United Airlines discriminated against him on the basis of his race by demoting him to a non-management position while "several non-black supervisors, some with less seniority and no better performance, were retained [or transferred to O'Hare from other airports]." On November 26, 2003, Plaintiff filed a complaint in this court, in which he makes the same factual allegations as in his EEOC, and alleges that United's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.[2] In addition, during his deposition, Plaintiff raised several additional allegations of discriminatory treatment. Specifically, Plaintiff alleged: (1) that he has not been provided with the same training opportunities that other non-minority employees received; (2) that since the layoffs, United has hired non-minorities with no experience to serve as Ramp Supervisors; and (3) that his supervisor Bruce Whiting has made racially insensitive comments

---

[1] The record does not reflect whether United filled these vacancies via promotions from within the company, new hires from outside the organization, or a combination of both.

[2] Although Plaintiff checked the § 1983 box on his form complaint, the court cannot discern any basis for such a claim in this case. Defendant in this case is not a government entity, nor has Plaintiff alleged any additional facts bringing his claims within the purview of § 1983.

5

and gave him a lower performance rating than he expected. Defendant now moves for summary judgment.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party may not avoid summary judgment by relying on unsupported factual allegations in its factual statement or arguments. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). Moreover, "[a] district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith*, 321 F.3d at 683, citing *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). To quote the Seventh Circuit, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Id.*, quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). As the non-moving party, the burden is on Plaintiff, despite his *pro se* status, to present evidence demonstrating that there is a genuine issue of material fact

### A. Claim of Race Discrimination in Discharge

An employee bringing a claim of race discrimination under Title VII or § 1981 can proceed either directly, by presenting direct and/or circumstantial evidence of discriminatory intent, or indirectly, under the *McDonnell Douglas* burden-shifting method. *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272-72 (7th Cir. 2004), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff has presented no direct evidence of race discrimination.[3] Accordingly, he must proceed under the latter approach. Under the *McDonnell Douglas* method, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was meeting the City's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) the City treated similarly situated employees who were not African-American more favorably. *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999). If Plaintiff is able to establish a *prima facie* case, the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Williams*, 342 F.3d at 788, citing *Helland v. South Bend Cmty. Sch. Corp.*, 93 F.3d 327, 329 (7th Cir. 1996). Finally, if Defendant is able to articulate such a nondiscriminatory reason, Plaintiff must establish by a preponderance of the evidence that the proffered reasons are pretextual. *Williams*, 342 F.3d at 788, citing *Bruno v. City of Crown Point*, 950 F.2d 355, 361 (7th Cir. 1991).

There is no dispute that Plaintiff, as an African-American, is in a protected class. Defendant, however, contends that his demotion was voluntary and, as such, did not constitute an adverse employment action. As discussed above, Plaintiff himself testified during his deposition that on at least three occasions after his promotion to Ramp Supervisor he offered to return to his original position as Ramp Service Worker to avoid the possibility of being laid off. Moreover, after being informed, during his annual performance review in January 2003, that he would likely be furloughed.

---

[3] During his deposition, Plaintiff claimed that his former supervisor Whiting had made insensitive and disrespectful comments about his Afro hairstyle. (Carr Dep., at 54-55.) Plaintiff also stated, however, that he could not remember whether any racial comments were made, or the content of any such comments. (*Id.* at 55.) In any event, Plaintiff does not claim to have presented sufficient evidence of discriminatory intent to proceed under the direct method.

Plaintiff volunteered to return to his former position. Thereafter, effective January 13, 2003, Plaintiff returned to his position as Ramp Service Worker.

In his response brief, Plaintiff disputes Defendant's claim that his demotion was voluntary, though he does not explain the basis for this denial: "If Plaintiff asked or volunteered [to return to his former position] . . . to whom??? Did these meetings take place with? Defendant has no ideal [sic] of who was at these meetings, and the meeting in question [of] whether Plaintiff asked to resign and be return[ed] to his previous job." (Plaintiff's Memorandum in Support [of] its Responce [sic] to Motion for Summary Judgment, hereinafter Pl.'s Response, at 4.) In addition, Plaintiff also alleges, without any evidentiary support, that he was not working on the day that he advised Whiting that he wanted to return to his old position. (Id. at 5.) All of this, however, contradicts his express deposition testimony, during which he acknowledged that he voluntarily returned to his Ramp Service Worker position to avoid being laid off. Specifically, he testified that after being told by Whiting during his annual performance review he would likely be furloughed, he responded "Furlough? I am not getting furloughed. I guess I will go back to the ramp." (Carr Dep., at 81.) When asked as a follow up question, "So rather than being furloughed you exercised your seniority and went back to the ramp serviceman position?," Plaintiff responded "Yes." (Id. at 81-82.)

In light of this testimony, there is no basis for Plaintiff to dispute United's assertion that his "demotion" was indeed voluntary. As such, it does not constitute an adverse employment action sufficient to demonstrate a *prima facie* case of discrimination under Title VII. *See Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (plaintiff's voluntary demotion did not constitute an adverse employment action sufficient to demonstrate a *prima facie* case of gender discrimination). Plaintiff does not allege that the circumstances were "so intolerable" as to make his

8

demotion constructive. *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996), citing *Chambers v. American Trans Air., Inc.*, 17 F.3d 998, 1005 (7th Cir. 1994). That is, Plaintiff does not claim that Defendant took actions that, in effect, forced him to resign. In his brief, Plaintiff seems to suggest that he believes his former supervisor Bruce Whiting incorrectly gave him a lower annual evaluation score than he had expected; he does not suggest, however, that Defendant manipulated his review score to ensure that he would either voluntarily accept a demotion from his management position or be laid off. Indeed, in his brief, Plaintiff insists that the decision had already been made to demote him and that Whiting "was not supposed to tell [P]laintiff that he was being furloughed on [sic] the January 7[th] meeting." (Pl.'s Response, at 5.) Having made this "grave error," Plaintiff claims that "the only way [for Whiting] to fix the mistake is [sic] to tell his Boss" that Plaintiff had asked to resign. (*Id.*) Later, "[a]fter finding out [that] plaintiff did not even work on the day [of his alleged resignation,]" Whiting "was left to make up the biased CRP score to make plaintiff[']s complaint seem factious [sic]." (*Id.*) Again, Plaintiff's account lacks any evidentiary support; he has not so much as submitted his own affidavit in evidentiary support of these claims, which would, in any event, contradict his sworn testimony.

Absent an adverse employment action, Plaintiff cannot make out a *prima facie* case of discrimination. Moreover, even if the court were to hold that Plaintiff's demotion did constitute an adverse employment action, Plaintiff would still not be able to state a *prima facie* case because he has presented no evidence that similarly situated employees were treated differently. "Similarly situated" employees are those who are "directly comparable in all material respects." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003), citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In determining whether two employees are "directly comparable," courts

9

look to whether the two employees: (1) held the same job description; (2) were subject to the same standards; (3) were subordinate to the same supervisor; and (4) had comparable experience, education, and other qualifications. *Ajayi*, 336 F.3d at 532. Plaintiff identifies six white employees who he asserts were similarly situated in these areas but treated more favorably by United – either being retained or moved into from other airports outside of the Chicago area. (Def.'s 56.1(a), ¶ 87.) During his deposition, however, Plaintiff admitted that he has no knowledge of their seniority or experience with United. In contrast, United has presented evidence showing that the employees cited by Plaintiff in fact had substantially more experience than he did, and thus were not similarly situated. (Def.'s 56.1(a), ¶¶ 87-107.) Absent evidence from Plaintiff on this issue, he cannot establish that any similarly situated workers were treated more favorably.

## B. Miscellaneous Remaining Claims

Concerned that Plaintiff's deposition testimony makes reference to additional claims of discrimination, Defendant devotes considerable attention to a body of case law that would preclude Plaintiff from presenting, in his complaint to this court, any claims not like or reasonably related to those mentioned in his underlying EEOC charge. *See generally Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000). Specifically, Defendant urges that the court not consider Plaintiff's claim that: (1) he was not provided with the same training opportunities that other non-minority employees received; (2) since the layoffs, United has hired non-minorities with no experience to serve as Ramp Supervisors; and (3) his supervisor Bruce Whiting allegedly made racially insensitive comments and gave him a lower performance rating than Plaintiff had expected. The court need not resolve this objection, as Plaintiff's submissions make clear these additional claims also do not survive summary judgment. In

his Memorandum in opposition to summary judgment, Plaintiff asserts that of some 20 individuals hired as supervisors since the initiation of this lawsuit, none are African American. Assuming that Plaintiff has admissible evidence to support that assertion, the court notes that he has not been damaged by United's alleged failure to rehire him because, since February 2003, Plaintiff has been "off work and is still currently off." (Plaintiff's Memorandum, at III.) The court presumes that Plaintiff has been unable to work as a supervisor during this period, as well. With respect to his suggestion that United discriminated against him by denying him training, Plaintiff himself states that the training process was initiated only after this lawsuit was filed. Plaintiff does not suggest that white supervisors employed at the same time that he held that position received more effective training. Finally, regarding his allegation that Whiting make racially insensitive comments, Plaintiff does not claim that these comments are sufficient to state a direct claim of discrimination and does not even address the matter in his response brief. The court concludes there are no disputes of fact concerning any of these issues.

## CONCLUSION

For the above reasons, Defendant's motion for summary judgment (Docket No. 22-1) is granted.

ENTER:

Dated: July 15, 2005

REBECCA R. PALLMEYER
United States District Judge